Filed 6/17/21  P. v. Osbourne CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHACHELL OSBOURNE,<br><br>    Defendant and Appellant. | D077000<br><br><br>(Super. Ct. No. SCN390149) |

APPEAL from a judgment of the Superior Court of San Diego County, William Y. Wood, Judge.  Reversed in part, affirmed in part.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew S. Mestman and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury convicted Osbourne of one count of grand theft from an elder and one count of grand theft based on an incident in which Osbourne took a $9,000 embroidery machine from a shop owned and operated by an 80-year-old man.[1]

On appeal, Osbourne contends that his conviction for grand theft must be reversed because it is a lesser included offense of his conviction for grand theft from an elder. The People concede that Osbourne's conviction for grand theft must be reversed.

Osbourne also contends that his trial counsel was constitutionally ineffective for failing to request a pinpoint instruction stating that the "lack of concealment" of the item taken supported Osbourne's "claim of right" defense, i.e., that he mistakenly believed that the item he took belonged to him.

We agree with Osbourne and the People that Osbourne's grand theft conviction must be reversed because it is a lesser included offense of grand theft from an elder. However, we disagree with Osbourne's contention regarding trial counsel's failure to request a pinpoint instruction pertaining to lack of concealment. Specifically, we conclude that Osbourne cannot demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. We therefore reverse the judgment in part, and otherwise affirm the judgment as modified.

---

[1] The jury acquitted Osbourne of other charges, including robbery and assault.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

    1. *The prosecution's case*

On July 4, 2017, Osbourne purchased a Brother 1400E embroidery machine and accompanying software from a family-owned business called Sew Pros, for $2,808, on a layaway plan.[2]  Osbourne made a $30 down-payment.  Pursuant to the layaway plan, he would have to pay the remaining balance in full within a year.

A few days later, Osbourne stopped by the Sew Pros store in Oceanside and made a $1,000 cash payment toward his purchase.  Carleton T., the 80-year-old owner of Sew Pros, provided Osbourne with a receipt.  Several days after that, Osbourne returned to the store to make a payment of $1,000 by credit card.  Even though there was a balance remaining after this payment, Osbourne persuaded Carleton to let Osbourne take the machine and software with him.  The remaining balance was $778.  Carleton again provided a receipt, which noted the outstanding balance, and stated that the amount was due within 90 days.

The machine that Osbourne purchased came with a two-year warranty for free service.  Osbourne took the machine into the Sew Pros' Oceanside store for service on August 2, 2018.  Carleton accepted the machine and transported it to Sew Pros' main store in El Cajon, where service on machines is normally handled.

---

[2]    Osbourne planned to use the machine in his business, which involves embroidering designs on shirts and selling the shirts at music events.

In the meantime, Carleton's daughter, Christina V., who was the bookkeeper for the Sew Pros business, was reviewing accounts and noticed that Osbourne had not paid the outstanding balance of $778.[3] She told Carleton that he should not release the machine to Osbourne until the outstanding balance was paid.

Both Carleton and Christina left voicemail messages for Osbourne letting him know that he still owed money on the embroidery machine. Osbourne called Sew Pros several days later. He spoke with Christina and told her that he believed he had paid off the balance. Christina asked whether Osbourne had a receipt to demonstrate that he had paid the remaining balance. Osbourne indicated that he did not have such a receipt. Osbourne then stated that he wanted to return the software, saying that it did not work well. Christina informed him that they could not accept a return of used software. Christina thought that Osbourne sounded "a little bit desperate" during the call. After Christina and Osbourne ended the call, Christina called her father and told him that she had a " 'weird feeling about this.' " She asked him to " 'put [the machine] in the back room where it's not able to be seen.' "

On August 16, 2018, Osbourne went to the Oceanside store to pick up his machine. Carleton told Osbourne that he would have to pay the $778 outstanding balance before he could take the machine. In response, Osbourne "went wild." Osbourne knocked everything off of a desk and then ran into the back room where the repaired machines were kept. Carleton followed Osbourne, telling him that he was not allowed in the back. Carleton

---

3    Christina testified that she had "got[ten] a little behind" in pursuing outstanding balances because she had been spending a lot of time caring for her mother and father, who were experiencing health issues at the time.

testified that when he followed Osbourne into the back room, Osbourne attacked him, punching and kicking him and knocking him to the cement floor. Carleton said that he hit his head on metal shelves in the room as he fell. According to Carleton, Osbourne continued to kick and hit him while he was on the ground and then ran back into the front area of the store.

Osbourne was heading to the exit of the store. On his way out, he stopped and grabbed a blue machine, which Carleton described as a "biggy." It was a "heavy machine" worth $9,000. Osbourne said to Carleton, " 'I'll show you. I'll grab that machine,' " as he picked up the machine and quickly exited the store. The machine that Osbourne took was much larger and had more features than the machine that Osbourne had purchased.

Carleton called 911. When the police arrived, they found Carleton bleeding and bruised in several places. Paramedics arrived and treated Carleton, but he declined to go to the hospital in the ambulance because he was the only one at the store and was unwilling to leave the store unattended. Later that day, after the store had closed, Christina took Carleton to an urgent care clinic for treatment of a large laceration on his left elbow, a second laceration on his left forearm, and various hematomas, which occur when an individual "sustain[s] a direct blow to the skin," causing "blood underneath the skin." Carleton was released after a couple of hours, but returned for additional care "three or four times."

2. *The defense*

Osbourne testified that, contrary to the claims of Carleton and Christina, he had returned to the store twice—in mid-August and mid-September 2017—to make cash payments to satisfy the remaining $778 balance on the embroidery machine and its software. He stated that he

did not recall whether Carleton had given him receipts for those payments, and he was unable to locate any receipts.

Osbourne stated that he first brought the machine into Sew Pros for routine service in December 2017. At that time, according to Osbourne, Carleton accepted the machine for service, and no one indicated to him that there was an outstanding balance due. He said that he picked up the machine three days after taking it in for service.

Osbourne testified that when he went to the store on August 16, 2018 to pick up the machine, he told Carleton that he had already paid the $778. Because Carleton was insisting that the $778 remained due, Osbourne offered to pay $200 as a compromise, but Carleton refused the offer. Osbourne explained that he accidentally knocked some items off a counter while he was gesturing. Osbourne also testified that while he was looking for his machine in the back room of the store, he heard a crashing sound behind him and saw Carleton on the floor. Carleton was bleeding, and Osbourne helped him up. Carleton was angry and demanded that Osbourne leave the store.

Osbourne testified that he thought he had grabbed his own machine when he left the store, and that he did not realize until he got home that he had taken a different machine. According to Osbourne, he decided to hold on to the machine that was not his until he could obtain legal advice; he thought that he could arrange an exchange to get his own machine back and possibly sue Sew Pros to recover profits that he had lost from not having his machine to use for embroidering shirts.

6

B. *Procedural background*

Osbourne was charged with robbery (Pen. Code,[4] § 211; count 1); assault on an elder likely to produce great bodily harm (§ 368, subd. (b)(1); count 2); assault likely to produce great bodily injury (§ 245, subd. (a)(4); count 3); theft from an elder of property worth more than $950 (§ 368, subd. (d); count 4) and grand theft of personal property worth more than $950 (§ 487, subd. (a); count 5). The charging document also alleged that Osbourne personally inflicted great bodily injury on a person aged 70 years or older with respect to counts 2 and 3 (§ 12022.7, subd. (c)).

On October 29, 2019, a jury convicted Osbourne of theft of property worth more than $950 from an elder, as charged in count 4, and grand theft of personal property worth more than $950, as charged in count 5.

The court sentenced appellant to three years of formal probation for theft from an elder, and stayed any punishment for grand theft pursuant to section 654. Osbourne filed a timely notice of appeal.

III.

DISCUSSION

A. *Osbourne's conviction on count 5 must be reversed because grand theft is a lesser included offense of grand theft from an elder*

Osbourne argues that he cannot stand convicted of both grand theft from an elder and grand theft because the latter is a lesser included offense of the former. The People concede this issue, and we agree.

---

[4]     Further statutory references are to the Penal Code unless otherwise indicated.

7

For purposes of the rule against convictions for both greater and lesser included offenses, the statutory elements test is used to determine whether a charged offense is necessarily included within another charged offense. (*People v. Reed* (2006) 38 Cal.4th 1224, 1231.)  Under the elements test, a court considers only the statutory elements of the two offenses, and the question is whether all of the statutory elements of the lesser offense are necessarily included within those of the greater offense—i.e., "if a crime cannot be committed without also committing a lesser offense, the latter is a necessarily included offense." (*People v. Ramirez* (2009) 45 Cal.4th 980, 985.)

As the People acknowledge, the elements of grand theft from an elder include all of the elements of grand theft plus one additional element—i.e., that the defendant knew or reasonably should have known that the owner of the property was an elder adult.  (Compare § 368, subd. (d) and § 487, subd. (a).)  "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)

Accordingly, we accept the People's concession and reverse Osbourne's conviction for grand theft.  Because the trial court stayed imposition of sentence on this count pursuant to section 654, we modify the judgment to strike that count rather than remand for resentencing.

8

B. *Defense counsel did not provide ineffective assistance*

Osbourne contends that his trial counsel rendered constitutionally ineffective assistance in failing to request a pinpoint instruction with respect to Osborne's "lack of concealment" of the item taken, in support of his "claim of right" defense. According to Osbourne, his trial counsel should have requested a pinpoint instruction telling the jury that the lack of concealment of property being taken may be considered as evidence that the defendant had a good faith belief that he was entitled to take the property.

1. *Additional procedural background*

Osbourne's defense to the theft charges was that he mistakenly believed that the machine that he grabbed on the way out of the Sew Pros store belonged to him. Consistent with this defense, the trial court instructed the jury with CALCRIM No. 1863, the standard instruction regarding a "claim of right" defense:

> "If the defendant obtained property under a claim of right, he did not have the intent required for the crime of theft or robbery.
>
> "The defendant obtained property under a claim of right if he believed in good faith that he had a right to the specific property or a specific amount of money, and he openly took it.
>
> "In deciding whether the defendant believed that he had a right to the property and whether he held that belief in good faith, consider all the facts known to him at the time he obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith.

9

> "If you have a reasonable doubt about whether the defendant had the intent required for theft or robbery, you must find . . . him not guilty of robbery, as charged in Count One; theft from an elder, as charged in Count Four; and grand theft, as charged in Count Five."

During closing argument, defense counsel argued, "On his way out after this has just happened, [Carleton] just fell, Mr. Osbourne realizes, 'Crap. I shouldn't have gone back there. This turned into a mess,' and he's leaving. Quick glimpse, he sees what he thinks is his machine, and he grabs it. Grabs it, walks out, 'Oh, here's my machine. I'm leaving.' [¶] He has taken the machine that he believes is his. He puts it in the back of his car. He gets home, when he gets it [*sic*], he realizes, 'Whoa. Whoops. Not my machine.' [¶] Now, [he] never intended on keeping it permanently. He knew that was not his machine. He just wanted his old machine. . . . [¶] We know he didn't hide the machine. He didn't sell it. He didn't damage it or do anything to somehow conceal it."

### 2. *Analysis*

A defendant claiming ineffective assistance of counsel must satisfy a two-part test; first, the defendant must show that counsel's performance was deficient; second, the defendant must demonstrate that the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) With respect to the first prong, the defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured against "prevailing professional norms." (*Id.* at p. 688.) With respect to the prejudice prong, the defendant is required to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

10

different." (*Id.* at p. 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Ibid.*)

We need not consider whether counsel's failure to request the identified pinpoint instruction constituted deficient performance because we conclude that Osbourne's ineffective assistance of counsel claim fails on the ground that he cannot establish that, but for trial counsel's alleged error, it is reasonably probable that "the result of the proceeding would have been different." (*Strickland, supra*, 466 U.S. at p. 694.)[5]

The trial court instructed the jury with the standard instruction regarding the claim of right defense. This instruction stated that openly taking the property, combined with a good faith belief in the right to the property, constituted a valid claim-of-right defense. Thus, the jury was told that openly taking the property, i.e., taking an item without attempting to conceal the taking, would support Osborne's claim of right defense. Given this, the inclusion of an additional instruction regarding lack of the concealment of the item taken would have been redundant; it is not reasonably probable that Osbourne's claim of right defense would have been successful if the trial court had provided a second instruction informing the jury that it could consider the lack of concealment as evidence that the defendant held a good faith belief that he was entitled to take the property.

Moreover, the evidence was such that we are convinced that Osbourne's claim of right defense would not have succeeded even if the trial court had given a separate instruction informing the jury that not concealing one's taking of property can support a claim of right defense. There was no dispute as to whether Osbourne attempted to conceal the embroidery machine that

---

5    We do not intend to suggest that counsel's conduct fell below an objective standard of reasonableness; rather, we merely presume so for the purpose of argument.

he took from Sew Pros.  Not only did the evidence demonstrate that Osbourne did *not* attempt to conceal the machine as he grabbed it and took it out of the store, but Carleton testified that Osbourne blatantly took the machine and made a comment that suggested that Osbourne was taking the machine as retribution for Carleton's refusal to give him his own machine.  Specifically, according to Carleton, Osbourne picked up the machine and stated, " 'I'll show you.  I'll grab that machine.' "  Further, the machine that Osbourne took on his way out of the store was larger and heavier than the machine that Osbourne had purchased and was presumably very familiar with, given that he had been using it for over a year.  The machine that Osbourne took was also a different color from Osbourne's machine, and it had a screen that was more than two times larger than the one on Osbourne's machine.  In addition, the machine that Osbourne took from the store was displayed in the front of the store when Osbourne arrived.  Prior to taking that machine, Osbourne never indicated in any way that he thought that machine was his; instead, Osbourne admitted that he went to the *back* of the store to look for his own machine.  This constitutes additional evidence consistent with the other evidence demonstrating that Osbourne knew that the machine he took from the store was not his.

The jury clearly did not believe Osbourne's testimony or his defense that he thought he was taking his own machine.  Because there was no dispute that Osbourne did not attempt to conceal the machine that he took, and given the evidence that the machine Osbourne took differed in size and appearance from his own machine, it is not reasonably likely that an instruction further highlighting the lack of the concealment would have altered the jury's view of the evidence.

The cases on which Osbourne relies in arguing that his counsel was deficient in failing to request a pinpoint instruction regarding lack of concealment do not change our opinion. Osbourne relies on *People v. Stewart* (1976) 16 Cal.3d 133, 138, 141 (*Stewart*), an embezzlement case in which the Supreme Court concluded that the trial court had a sua sponte duty to instruct the jury with a "correct instruction setting forth the general theory relied upon by defendant"—i.e., that the "defendant was actually authorized, or, alternatively, possessed a good faith belief that he was so authorized, to appropriate corporate funds in the manner disclosed in the record." (*Id.* at p. 140.) In reaching this conclusion, the Court further concluded that the trial court should have given another instruction requested by the defense stating that "lack of concealment [was] evidence of good faith belief in authority and lack of fraudulent intent." (*Id.* a p. 141.) In this case, the trial court *did* instruct on Osborne's defense theory by giving the standard claim of right instruction; that instruction informed the jury that "openly" taking the property in question supports a claim of right defense. This is essentially the same as informing the jury that the lack of concealment of the item taken supports a claim of right defense. Further, *Stewart* offers no assistance with respect to whether a defendant can demonstrate the prejudice required to establish ineffective assistance of counsel by failing to request a separate pinpoint instruction on lack of concealment; rather, *Stewart* stands merely for the proposition that a court should instruct on lack of concealment with regard to a claim of right defense if requested.[6] Osbourne also relies on

---

6      In *Stewart*, the Supreme Court was not considering a standard instruction such as the one that was given here that included a reference to "openly" taking the property in question. Rather, the *Stewart* court was considering a general claim of right instruction that had been proposed by the defense, which read as follows: " 'It is a defense to the charge of

13

*People v. Hussain* (2014) 231 Cal.App.4th 261, in support of his argument that his counsel was ineffective. *Hussain* involved the failure of defense counsel to request even the *standard* claim of right instruction where "the heart of [the defendant's] defense to the grand theft charge" was that he "had a good faith belief that the lien sale [that defendant arranged] had been conducted properly." (*Id.* at p. 271.) The *Hussain* court concluded that counsel's failure to request the standard claim of right instruction constituted ineffective assistance and required reversal of the defendant's conviction for grand theft. (*Id.* at pp. 270–272.) As noted, the trial court in this case instructed with the standard claim-of-right instruction; Osbourne is complaining about his counsel's failure to request what amounts to a redundant pinpoint instruction. *Hussain* therefore does not alter our conclusion that Osbourne has failed to demonstrate that it is reasonably probable that, but for trial counsel's failure to request a pinpoint instruction on lack of concealment, the result of the proceeding would have been different. (See *Strickland, supra*, 466 U.S. at pp. 687, 697.)

---

embezzlement if the defendant was under the belief that he was acting within the scope of his authority.' " (*Stewart, supra*, 16 Cal.3d at p. 138.) Thus, in *Stewart*, unlike here, the requested pinpoint instruction would have constituted the *only* reference in the instructions to the lack of concealment by the defendant. (See *id.*, at pp. 138–142.)

IV.

DISPOSITION

Osbourne's conviction on count 5 is reversed. His conviction on count 4 is affirmed. The trial court is directed to issue an amended minute order and order of probation reflecting the judgment as indicated, and to forward certified copies to the appropriate authorities.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.